IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE PAYTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 09678 |
| | ) | |
| JEWEL FOOD STORES, INC., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

The plaintiff, Clarence Payton, Jr., alleges that his former employer, Jewel Food Stores, Inc., ("Jewel") failed to accommodate his hearing impairment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA). Jewel now moves for summary judgment. Because Payton was terminated for his misconduct and not because of his disability, Jewel's motion is granted.

### BACKGROUND[1]

Jewel is an Illinois corporation that owns and operates retail grocery stores in the Chicago area. Jewel's Facts ¶ 1. Jewel employed Payton as a part-time service clerk (commonly referred to as a "bagger") from July 2005 through November 2008. *Id.* ¶ 21. Payton has a severe hearing impairment—he is completely deaf in his left ear and is only able to hear a small amount in his right ear. Payton's Resp. ¶ 51. Payton used hearing aids throughout his employment with Jewel. *Id.* ¶ 22. Payton did not need a sign language interpreter to perform his duties as a service clerk,

---

[1] The Court takes the following facts from the Defendant's Statement of Material Facts (Dkt. 38) ("Jewel's Facts"), where undisputed, and from Plaintiff's Response to Defendant's Statement of Material Facts (Dkt. 44) ("Payton's Resp."). Payton did not file an additional statement of facts.

such as offering customers assistance with their groceries, smiling at customers, and saying "Thank you, come again." *Id*. ¶ 24.

Jewel's employment policies, including polices governing employee behavior and conduct, are set forth in its Associate Policy Handbook. Jewel's Facts ¶¶ 7-8. The 2004 Handbook contains a customer relations policy, which states, "Rudeness and discourtesy toward customers will not be tolerated at any time. . . . Any instances of rudeness and discourtesy toward our customers will be dealt with severely; discipline will be administered up to and including termination." *Id*. ¶ 8. The 2008 Handbook reiterates the policy against rudeness and provides examples of conduct that may lead to termination, including "fighting with or threatening, verbally abusing, or harassing other associates, customers, vendors, etc." *Id*. ¶ 9. Jewel also maintains guidelines for disciplining associates, referred to as the "Discipline Book," which highlights discourtesy to customers, incivility, and profanity as conduct that could result in immediate termination. *Id*. ¶ 13. Jewel has a collective bargaining agreement (CBA) with the United Food and Commercial Workers International Union, Local 881 (of which Payton was a member). *Id*. ¶ 11. The CBA incorporates Jewel's discipline policy, which states that employees may be terminated for misconduct or incivility as well as reasonable rules promulgated by management. *Id*. ¶ 12.[2]

When a Jewel associate is disciplined, the manager follows a standard procedure: he or she fills out a corrective action form related to the associate's violation, meets with the associate to explain the reason for the violation, reads the corrective action form to the associate, gives the associate the chance to respond, and asks the associate to sign the form. *Id*. ¶ 14. If the associate

---

[2] Payton disputes that the CBA states that employees may be terminated for incivility. Payton's Resp. ¶ 12. However, the CBA *does* state that just cause for discharge includes incivility. Dkt 39-1, Ex. D at 46.

2

refuses to sign the form, the manager calls in another employee represented by the union to serve as a witness. *Id*. Store managers and directors do not have authority to terminate an associate but must refer such decisions to the Associate Relations Department. *Id*. ¶ 15. To terminate an associate, the process is as follows: the store director fills out an Associate Relations Call-In Sheet relating to the violation and the associate's prior disciplinary record, the store director sends the Call-In Sheet and any other relevant documents to Associate Relations, then Associate Relations reviews the information to determine if termination is appropriate. *Id*.

Jewel hired Payton as a part-time service clerk in July 2005. *Id*. ¶ 19. During the interview process, initial training, and orientation, a sign language interpreter assisted Payton with communication. Payton's Resp. ¶¶ 20, 23. Payton received training related to customer service, including offering customers assistance with their groceries, smiling at customers, and thanking customers. *Id*. ¶ 24. It is undisputed that Payton could perform these duties without an interpreter. *Id*.

As enumerated in the CBA, the specific duties of a Jewel bagger include:

> sorting, bagging, and packaging sold merchandise, sweeping and cleaning parking lot and other adjacent areas outside the store, sweeping floors anywhere in the store, carrying and loading sold merchandise, emergency cleanups, snow removal, maintenance of lawns and shrubs, returning shopping carts to the store, filling bag racks, cleaning areas around and in front of the checker lanes, cleaning rest rooms and lunch room, collecting and sorting bottles disposing of trash and rubbish, washing windows and putting up window bills and signs, floor cleaning and maintenance throughout the store, price check and product check, returning customer overstock, facing shelves and washing and cleaning shelves and cases, and demonstrating with the understanding that service clerks will not be hired for the sole purpose of demonstrating.

*Id*. ¶ 25. Additionally, Jewel's job description for a service clerk lists as the first essential job function, "Assists and communicates with customers in a friendly, courteous and prompt

manner." Payton Dep. Ex. 25, Dkt. 39-3. It is undisputed that Payton understood his assigned tasks and duties, that he was able to communicate with customers and his co-workers, and that he was able to perform these duties, all without an interpreter. *Id.* ¶ 26. Payton also admits that he understood that customer service was an important part of his job at Jewel and that he understood that he was not supposed to be rude to Jewel customers. Payton Dep. at 149:7-13.[3]

Payton first worked at Jewel store number 3349, located at Narragansett and Diversey in Chicago, Illinois. Jewel's Facts ¶ 21. While working at this location, Payton received various forms of discipline for attendance violations. *Id.* ¶ 27. Payton admitted that he signed each of these attendance-related disciplinary forms and that, at the time of signing, he understood the reason for the discipline without the aid of an interpreter. Payton Dep. at 62:2–63:7. On December 22, 2006, Payton received a written warning for being rude to a customer. Payton acknowledged that he understood, without the aid of an interpreter, the reason for this warning. *Id.* at 70:6–71:3.

In June 2007, Payton requested and received a transfer to the Stony Island store, located at 1655 East 95th Street, Chicago, Illinois. Payton Resp. ¶¶ 1, 31. At the new location, Payton continued to receive corrective action warnings. He received an additional written warning for rudeness to a customer on July 27, 2007, and again, acknowledged that even without an interpreter he understood the reason for the disciplinary action. *Id.* at 74:3–75:3. On October 3, 2007, Payton received a written warning for poor job performance—making a face behind a customer and waving his hands. *Id.* at 78:19–79:18. When asked if he understood the reason for

---

[3] Payton's response to Jewel's Statement of Material Facts denies that he was aware of Jewel's customer service policy. Payton's Resp. ¶¶ 7-9. However, in Payton's deposition, he made both of these admissions. *See* Payton Dep. at 149:7-13.

4

the discipline, Payton responded affirmatively, noting that he "was sick of people's attitudes." *Id.* at 79:13-15.

Payton's manager issued a fourth corrective action warning for rudeness to a customer on May 16, 2008. Payton acknowledged that he understood the reason for the verbal warning, for rudeness in response to a customer who requested that he bag her groceries in a certain way. *Id.* at 84:2-24. Payton admitted that he communicated with his manager verbally about the incident without the aid of an interpreter. *Id.* at 85:9-17.

Although Payton and Jewel disagree as to whether Payton requested a sign language interpreter at each of his disciplinary meetings,[4] the only meetings at issue in Payton's complaint for failure to accommodate are the final two meetings that took place on November 18, 2008 and November 25, 2008. On November 18, 2008, Jewel received a customer complaint about Payton—that he had become argumentative and blocked a customer's car with shopping carts because he did not believe that the customer should park so close to the store entrance. Id. at 98:15-16, 99:22–101:2. Payton admitted that he became argumentative with the customer and that he understood the reason he was being disciplined. Id., 102:1-2. As a result of this incident, Jewel suspended Payton, reducing his hours to 60 percent of his assigned shifts. Id. at 102:4-5. Payton claims that he requested an interpreter to assist him in the November 18, 2008, meeting and that Jewel failed to accommodate his disability by not providing an interpreter. As a result of this failure to accommodate, Payton claims that he was not able to respond to the customer's

---

[4] Payton insists that he requested an interpreter at each disciplinary meeting. *See, e.g.*, Payton Dep. at 45:14–47:18, 63:8–66:25, 71:1–73:12, 75:1-25, 80:3-20, 85:15–86:9, 102:6-10. Jewel denies that Payton requested an interpreter at each meeting. *See* Def.'s Reply at 3, Dkt. 47. That these facts are disputed is not relevant to this Court's ruling on the failure to accommodate claim that solely relates to the November 18, 2008 and November 25, 2008, meetings. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) ("'[I]rrelevant or unnecessary' factual disputes do not preclude summary judgment.").

5

allegations and was suspended to reduced hours and corresponding reduced income. Am. Compl. ¶ 12-13, Dkt. 22.

A week later, on November 25, 2008, Jewel received another customer complaint about Payton. The customer complained that Payton had been loud and unfriendly, had pushed the customer's hand, and said, "I'll smack you." *Id*. at 118:3-9. Payton did not deny that he "talked back" to the customer and elaborated: "[I]f you're going to blow up at me, I'll give it right back. You said smack, I'll say smack. It's fair." *Id*. at 120:24–121:16, 122:11-13. At the disciplinary meeting, Payton's manager told him he was being let go; Payton understood that he was being let go due to customer complaints about his rudeness. *Id*. at 132:2-19. Payton claims that he requested an interpreter to assist him in the November 25, 2008, meeting and that Jewel failed to accommodate his disability by not providing an interpreter. As a result of this failure to accommodate, Payton claims that he was not able to respond to the customer's allegations and was terminated from employment with Jewel. Am. Compl. ¶ 14-15.

Payton filed a complaint with the Equal Employment Opportunity Commission (EEOC) on February 6, 2009, alleging discrimination under the ADA based on his suspension and termination of employment at Jewel. Am. Compl. ¶ 16. The EEOC issued a right to sue letter on September 6, 2012. Am. Compl. ¶ 17.

**DISCUSSION**

Payton's ADA claim is based on Jewel's alleged failure to accommodate his hearing impairment by failing to provide him with a sign language interpreter during the November 18, 2008 and November 25, 2008 disciplinary meetings. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding Jewel's motion for summary judgment, the

6

Court construes all facts and inferences in favor of the nonmoving party. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). If the moving party has demonstrated the absence of a disputed material fact, then the burden shifts to the nonmoving party to "provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Based on the undisputed facts in the record, Payton has not met his burden to provide evidence of specific facts creating a genuine dispute as to Jewel's liability. Summary judgment is therefore granted to Jewel.

To prevail on a failure to accommodate claim, Payton must demonstrate that: (1) he is a "qualified individual" with a disability; (2) his employer was aware of his disability; and (3) his employer failed to reasonably accommodate his disability. *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 682 (7th Cir. 2014) (*citing EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)). Jewel does not dispute that Payton has a disability. The parties dispute, however, whether Payton is a "qualified individual" under the ADA. Payton bears the burden of establishing that he is a qualified individual capable of performing the essential functions of his position. *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 493 (7th Cir. 2014) (*citing Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534-35 (7th Cir. 2013)).

A qualified individual is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). To be considered a qualified individual, Payton must demonstrate that he (1) satisfied his employer's legitimate selection criteria; and (2) was capable of performing the essential functions of the job with or without reasonable accommodation from his employer. *See Brumfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013); *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 862 (7th Cir. 2005). The Seventh Circuit has noted that

> the ADA does not shelter disabled individuals from adverse employment actions if the individual, *for reasons unrelated to his disability* (such as a poor work ethic, carelessness, bad attitude, insubordination or unprofessional demeanor), is *not qualified* for the job or is *unable to perform* the job's essential functions or fulfill the requirements of the position as prescribed by the employer or "fails to meet his employer's expectations."

*Hammel*, 407 F.3d at 862 (emphasis in original); *see also Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (concluding that employee's repeated absences constituted failure to perform the essential functions of her job); *cf. Palmer v. Circuit Court of Cook Cnty., Ill.*, 117 F.3d 351, 352 (7th Cir. 1997) ("[I]f an employer fires an employee because of the employee's unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the Americans with Disabilities Act."). The Court may consider evidence of an employee's poor attitude, careless behavior, deficient work performance, and noncompliance with workplace rules in determining whether the employee is a "qualified individual" under the ADA. *See Budde v. Kane Cnty. Forest Pres.*, 597 F.3d 860, 862 (7th Cir. 2010); *Hammel*, 407 F.3d at 862.

Payton has failed to demonstrate that he is a qualified individual capable of performing his essential job functions in a way that met Jewel's reasonable expectations. An essential function of Payton's job as a bagger at Jewel was to be polite and courteous to customers. Jewel enumerated its customer service policy in its employee handbook and listed this courtesy requirement as the first "essential job function[ ]" on the service clerk job description. Payton acknowledged in his deposition that he understood the importance of being polite to customers[5]

---

[5] Payton admitted that he was "told about the importance of being polite to customers" at the corrective action meeting on December 22, 2006. Payton Dep. at 70:23-25.

8

and that "customer service was an important part of [his] job." Payton Dep. at 149:7-13.[6] Yet Payton continued to exhibit rude and discourteous behavior to customers, in violation of Jewel's policy. An employee who fails to comply with universal work place rules fails to perform essential job functions. *Budde*, 597 F.3d at 862-63 (police chief involved in crash while driving under influence held not to be a qualified individual under the ADA due to failure to comply with department standards and policies).

Jewel warned Payton on numerous occasions, both verbally and in writing, that he needed to be polite to customers and work on his "GOT"—"Great, Offer, Thank"—customer service skills. *See, e.g.*, Payton Dep. 79:20–80:2. Yet Payton's conduct continued to fall below Jewel's expectations. Over the course of his nearly three and a half years of employment, Payton was disciplined at least 6 times for rudeness to customers, twice within the week immediately prior to his termination.

Payton does not dispute this record of disciplinary action and does not contend that any of these incidents had anything to do with his physical disability. Rather, he claims that his July 2008 employment evaluation is evidence that he was qualified to hold his position because the evaluation rated him as "meets expectations" in the area of customer service and therefore creates a material issue of fact as to whether he was meeting Jewel's reasonable expectations. Pl.'s Mem. Opp'n at 6-7, Dkt. 45. That argument runs headlong into Seventh Circuit precedent that Payton's brief simply ignores. The July 2008 evaluation does not create a material fact issue because the relevant inquiry is whether Payton was meeting Jewel's expectations *at the time of termination*. *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 287 (7th Cir. 2015). An evaluation

---

[6] Payton disputes that he understood Jewel's customer service policy. Payton's Resp. ¶¶ 7-9. However, in Payton's deposition, he made these admissions. *See* Payton Dep. at 70:23-25, 149:7-13.

9

issued more than four months earlier, relating to conduct even more dated, is not relevant to whether Payton was meeting Jewel's expectations when he was terminated in November 2008, particularly when, within the span of a single week, Jewel received two additional customer complaints about Payton—one involving a threat to "smack" the customer—after the July 2008 evaluation. *See, e.g., id.* (favorable performance evaluation fewer than six months prior to termination did not create issue of fact as to whether employee met employer's expectation at time of termination); *Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 545 (7th Cir. 2002) (satisfactory performance evaluation preceding termination was not evidence that employee met employer's expectation at time of termination). Moreover, although Payton received an overall "meets expectations" rating on the July 2008 performance review, that review specifically noted that Payton needed to "work on his customer service skills" and "learn to get along with other employee [sic]." Pl.'s Mem. Opp'n at 6.

Payton's argument that his continued employment for nearly three and a half years demonstrates that he was "qualified" as defined under the ADA is a species of the same argument and fails for substantially the same reason. Even assuming Payton's conduct met Jewel's expectations all the way up to the week before he was terminated, that would not show him to be "qualified" for the job, or meeting expectations, when he was terminated the following week after two incidents in which he was overtly confrontational toward customers (blocking a customer's car with shopping carts in one and swearing at and threatening to smack a customer in the other). Moreover, that Jewel continued to give Payton chance after chance despite misconduct that could have resulted in immediate termination is not evidence that Payton met Jewel's standards but rather that Jewel was giving Payton every opportunity to improve; Jewel's forgiveness does not equate to acceptance. The increased frequency of Payton's disciplinary

incidents (six incidents of rudeness to customers in total, three in the last year of his employment and two in the last week) and the escalating severity—the final two incidents involving physical aggression toward customers—are evidence that Payton was not meeting Jewel's expectations at the time of termination. *See Palmer*, 117 F.3d at 352 ("The Act protects only 'qualified' employees, that is, employees qualified to do the job for which they were hired; and threatening other[s] disqualifies one.").

Although Payton does not dispute his disciplinary track record, he argues that Jewel failed to accommodate his disability by failing to provide an interpreter at the November 18, 2008 and November 25, 2008 disciplinary meetings and thereby inhibiting his ability to respond to the customer complaints—in other words, he contends that he could have defended himself against the customer's complaints had an interpreter been present.[7] But this argument puts the cart before the horse; Payton was entitled to a reasonable accommodation of his disability only if he was a "qualified individual."[8] And because Payton cannot establish that he was a qualified individual, his argument that Jewel failed to engage in the statutorily required interactive process to fashion a reasonable accommodation necessarily fails as well. There is not an independent basis for liability under the ADA for failing to engage in an interactive process to fashion a reasonable accommodation. *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013) (*citing Rehling v. City of Chicago,* 207 F.3d 1009, 1016 (7th Cir. 2000)). Any failure to engage in the required processes is only considered once the employee has satisfied his burden of

---

[7] Payton never explains *what* he would have said at this meeting that would have turned the tide and saved his job. Given his admissions that he threatened to smack the customer in retaliation for her rudeness to him, moreover, there is no evidence from which a jury could infer that Jewel would not have terminated him even had a sign language interpreter been present.

[8] In view of Payton's failure to adduce evidence sufficient to create a fact issue as to whether he is a qualified individual under § 12111, it is not necessary to address Jewel's argument that it did not have a duty to provide accommodations in a disciplinary proceeding because it is not part of an employee's "essential job functions."

proving that he was a qualified individual, able to perform the essential functions of his position with or without accommodation. *Basden*, 714 F.3d at 1039 (*citing Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 563-64 (7th Cir. 1996)).

It is undisputed in this case that Payton was repeatedly disciplined, and ultimately terminated, for incidents when he was rude and confrontational toward customers. It is also undisputed that these incidents were in no way the product of Payton's disability. Payton understood that courtesy was an important part of his job, yet he was unable to conform his behavior to Jewel's policy. No reasonable jury could infer, then, that Payton was a qualified individual under the ADA, and therefore, no jury verdict holding that Jewel violated the ADA by failing to provide a sign language interpreter for Payton during the two disciplinary meetings preceding his termination could be sustained. Accordingly, summary judgment is granted for Jewel.

Dated: August 14, 2015

John J. Tharp, Jr.
United States District Judge